UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIG INSURANCE COMPANY, as successor to RANGER INSURANCE COMPANY, and ASSOCIATED ELECTRIC AND GAS INSURANCE SERVICES LIMITED,

                    Plaintiffs,

-against-

SWISS REINSURANCE AMERICA CORPORATION F/K/A NORTH AMERICAN REINSURANCE CORPORATION,

                    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/2025

21-cv-8975 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Plaintiffs TIG Insurance Company ("TIG"), as successor to Ranger Insurance Company ("Ranger"), and Associated Electric and Gas Insurance Services Limited ("AEGIS") initiated this action on November 1, 2021, against Swiss Reinsurance America Corporation ("SRA"), formerly known as North American Reinsurance Corporation ("NAR"), bringing forth a claim for breach of contract, which the Court now addresses.

      Presently before the Court are the Plaintiffs' and Defendant's Motions for Summary Judgment pursuant to Federal Rules of Civil Procedure 56. For the following reasons, the Court DENIES Plaintiffs' Motion for Summary Judgment and DENIES Defendant's motion for summary judgment.

## BACKGROUND

      Plaintiffs and Defendant submitted briefs, statements of material fact pursuant to Local Rule 56.1, respective counter statements of material fact, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background.

1

TIG, as Ranger's successor, and SRA are parties to six certificates of facultative reinsurance ("Certificates"). (Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Pltfs.' 56.1") ¶ 1, ECF No. 91.) Each of the Certificates represent a contract under which SRA reinsures Ranger's insurance liability assumed under the Ranger insurance policy listed on the face of the Certificate. (*Id*. ¶ 2.) There are six Ranger policies (the "Ranger Policies") for which Ranger is reinsured by SRA, wherein Ranger is insuring Duke Power Company ("Duke Power") and Carolina Power & Light Company ("CP&L") (together with Duke Power, "Duke") across the period October 31, 1982, to October 31, 1985. (*Id*. ¶ 3.)

These policies were issued as part of a fronting arrangement between Ranger and AEGIS (Plaintiffs' Additional Statement of Facts ("Pltfs.' ASF") ¶ 9, ECF 94.)  This fronting arrangement was necessary because AEGIS was not a licensed insurer in North Carolina and could not directly issue insurance policies for companies, such as Duke, operating therein.  (Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1") ¶ 13, ECF No. 89.) Ranger, however, was admitted in North Carolina, and could therefore issue insurance policies for Duke. (Pltfs.' ASF ¶ 8.) Thus, Ranger issued the aforementioned six insurance policies across the October 31, 1982, to October 31, 1985 period. (*Id*. ¶ 41.)

Each Certificate contains language that states: "[SRA] DOES HEREBY REINSURE [TIG] (herein called the COMPANY) with respect to the COMPANY'S policy hereinafter described, in consideration of the payment of the premium." (Pltfs.' 56.1 ¶ 23.) The "COMPANY's policy" referenced in each of the six Certificates was the given applicable policy of the six Ranger Policies. (*Id*. ¶ 3.)

2

Over the life of the Ranger Policies, spanning decades, AEGIS handled all claims and paid all owed claims. (Def.'s 56.1 ¶ 39.) Ranger and, by succession, TIG never paid a single claim under the Ranger Policies. (*Id.* ¶ 41.)

Decades later after the Certificates' execution, Duke notified AEGIS and TIG of potential liability to remediate environmental damage caused by coal ash at power plants in North Carolina. (Def.'s 56.1 ¶ 48.) Duke therefore requested that AEGIS produce copies of any insurance policies issued to Duke in the years preceding 1987, specifically naming the Ranger Policies. (*Id.* ¶ 49.) In March 2017, Duke commenced its insurance coverage action (the "coal ash litigation") against AEGIS, TIG, and other insurers in North Carolina state court to recover under various insurance policies, including the Ranger Policies. (*Id.* ¶ 56.) TIG and AEGIS entered into a written agreement dated May 26, 2017, wherein TIG agreed that AEGIS would control responding to the coal ash litigation. (*Id.* ¶ 58.) Within the agreement, AEGIS "represent[ed] and acknowledge[d] that it [was] responsible for 100% of past and future lost (including any extra contractual loss) and defense costs payable under the Ranger Policies." (*Id.* ¶ 59.)

Duke's coal ash litigation claims specific to the Ranger Policies were settled on or about August 3, 2021. (*Id.* ¶ 63.) The settlement released any potential claims arising from the Ranger Policies. (Pltfs.' 56.1 ¶ 91.) AEGIS paid the entire settlement amount. (*Id.* ¶ 97.) AEGIS posted a case reserve for the entire amount of the settlement payment following the settlement with Duke. (Def.'s 56.1 ¶ 70.) TIG did not post such a reserve. (*Id.* ¶ 69.)

Subsequently, AEGIS sent SRA a bill seeking 57% of the settlement amount. (Pltfs.' ¶ 100.) TIG represents that such a percentage constitutes the settlement payment portion TIG was responsible for, and, by extension, the portion SRA, as the reinsurer of the Ranger Policies, was due to pay. (*Id.* ¶ 99.) SRA disagrees with owing such an obligation and, to date, SRA has refused

3

to remit any payment towards the portion of the settlement amount it purportedly owes AEGIS. (*Id.* ¶ 102.)

Based on the foregoing, Plaintiffs bring a claim for breach of contract.

## PROCEDURAL HISTORY

On November 2, 2021, Plaintiffs commenced this action against the Defendant in their Complaint ("Compl."). (ECF No. 1.) On March 29, 2024, Defendant filed its motion for summary judgment, along with its memorandum of law in support. (ECF Nos. 83, 84.) Likewise, Plaintiffs filed their motion for summary judgment, along with their memorandum of law in support. (ECF Nos. 87, 88.) Plaintiffs filed their memorandum of law in opposition to Defendant's motion for summary judgment, and Defendant filed its opposition to Plaintiffs' motion for summary judgment. (ECF Nos. 97, 99.) Plaintiffs filed their reply in further support of their motion for summary judgment, and Defendant filed its reply in further support of its motion for summary judgment. (ECF Nos. 107, 112.) Finally, Plaintiffs filed their Rule 56.1 Statement (ECF No. 91), and Defendant filed its Rule 56.1 Statement (ECF No. 89), and Plaintiffs and Defendant filed respective Counter Statements (ECF Nos. 94, 100.)

## LEGAL STANDARD

### A. Rule 56

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may

4

support an assertion that there is no genuine dispute of a particular fact by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

5

# DISCUSSION

Plaintiffs bring a claim for breach of contract against the Defendant, which the Court now addresses.

## A. Whether AEGIS is a Party to the Certificates

In order to "state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). A third-party beneficiary to a contract has standing to sue for breach. *Hillside Metro Associates, LLC v. JPMorgan Chase Bank, N.A.*, 747 F.3d 44, 50 (2d Cir. 2014). However, the Second Circuit has "held that a non-party to the contract lacks standing to sue for breach absent a valid assignment of that claim." *Rynasko v. New York Univ.*, 63 F.4th 186, 194 (2d Cir. 2023). *See, e.g.*, *Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l.*, 790 F.3d 411, 418 (2d Cir. 2015) (plaintiff lacked standing to bring contract action in its own name on promissory notes with respect to which plaintiff was authorized to collect payment because plaintiff did not establish valid assignment of ownership of notes).

Here, it is not disputed that TIG, as successor to Ranger, and SRA are the parties to the Certificates. *See* (Pltfs' 56.1 ¶¶ 1-2); (Def's 56.1 ¶ 9.) Thus, AEIGIS cannot seek recovery for any supposed breach of contract based on being a party to the Certificates. Likewise, there are no factual averments in the parties' respective Rule 56.1 Statements or Counterstatements that would suggest that AEGIS was an anticipated third-party beneficiary under the Certificates. *See generally* (Pltfs.' 56.1); (Def's 56.1). Therefore, AEGIS cannot prosecute a breach of contract claim as a party to or as a third-party beneficiary of the Certificates.

## B. Whether TIG Had a Breach of Contract Claim Against SRA That Could Be Properly Assigned to AEGIS

Because AEGIS was neither a party to nor a third-party beneficiary of the Certificates, AEGIS can only state a breach of contract claim against SRA if TIG itself had a breach of contract claim against SRA that could be validly assigned to AEGIS. Accordingly, there are two questions the Court must consider: (1) whether SRA breached its contractual obligations to TIG in such a way that gives rise to a breach of contract claim; and (2) if SRA breached its contractual obligations to TIG, whether TIG could properly assign its entitlement to redress to AEGIS. The Court addresses the questions in turn.

### a. Whether SRA Breached Its Contractual Obligations to TIG under the Certificates by Refusing to Pay AEGIS

As stated *supra*, in order for TIG, as successor to Ranger, to state a breach of contract claim against SRA, there: (Factor 1) must have been an agreement, (Factor 2) adequate performance by the plaintiff, (Factor 3) a breach by the defendant, and (Factor 4) damages.

The parties do not dispute there was an agreement between SRA and Ranger; the parties entered into six facultative agreements enshrined in the Certificates. (Pltfs.' 56.1 ¶ 3); (Def.'s 56.1 ¶¶ 9-10); *see* (SLD Decl., Exs. 198, 200, 225, 229, 240, and 244) (Factor 1). SRA received a fee in consideration of the Certificates. (Def.'s 56.1 ¶ 28); (Pltfs.' 56.1 ¶ 23) (Factor 2).

Where the parties deviate are whether SRA breached the terms of the Certificates (Factor 3), and whether any supposed breach resulted in damages to the Plaintiffs (Factor 4) due to SRA's refusal to remit payment to AEGIS in the amount of 57% of the total settlement payment AEGIS made to Duke releasing all liability under the Ranger Policies. (Pltfs.' 56.1 ¶¶ 84, 101-102.) Thus, this case, at its core, turns on whether SRA breached the terms of the Certificates it signed: if SRA

7

is in breach of the certificates, then TIG, as successor to Ranger, would have a claim to assign to AEGIS; if SRA is not in breach of the Certificates, then TIG, and by extension AEGIS, have no breach of contract claim against SRA

Plaintiffs argue that the Certificates plainly anticipated SRA being responsible for the portion of the settlement payment AEGIS attempted to bill to SRA. Plaintiffs cite to the fact that each of the six Certificates contain the following language:

> "[SRA] DOES HEREBY REINSURE [TIG] (herein called the Company) with respect to the Company's policy hereinafter described, in consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth as follows . . . Reinsurance Accepted 100% . . . [a]ll claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements promptly following receipt of proof of loss." (Pltfs.' 56.1 ¶ 23.)

The "Company's policy" being referenced is the respective Ranger Policy the SRA Certificate is specifically reinsuring. For clarity's sake, the Court restates the referenced Ranger Policies, taken from Def.'s 56.1¶ 10:

1. SRA Reinsurance Contract Number 1345102 - Ranger Policy BSP 112047, for the period October 31, 1982 to October 31, 1983;

2. SRA Reinsurance Contract Number 1345113 – Ranger Policy BSP 122048, for the period October 31, 1982 to October 31, 1983;

3. SRA Reinsurance Contract Number 1519925 – Ranger Policy EUL 300658, for the period October 31, 1983 to October 31, 1984;

4. SRA Reinsurance Contract Number 1519936 – Ranger Policy EUL 300659, for the period October 31, 1983 to October 31, 1984;

5. SRA Reinsurance Contract Number 1520167 – Ranger Policy EUL 300579, for the period October 31, 1984 to October 31, 1985;

      6.   SRA Reinsurance Contract Number 1520211 – Ranger Policy EUL 300578, for the period October 31, 1984 to October 31, 1985;

In support of their motion for summary judgment, Plaintiffs argue that the Certificates are "clear and unambiguous and must be enforced according to their written terms." (Pltfs.' Mot., at 9.) Plaintiffs assert that the language of the Certificates clearly assign liability to SRA for *any* liability arising under the Ranger Policies. According to Plaintiffs, when AEGIS remitted payment to Duke as part of the settlement agreement, SRA became responsible for the portion of the settlement assignable to TIG. (Pltfs' 56.1 ¶ 27). By SRA not honoring such terms, Plaintiffs assert that they have been damaged in the amount AEGIS billed SRA – 57% of the Duke settlement payment. (*Id.* at 12.) Plaintiffs also seek prejudgment interest. (*Id.*)

Defendant contests the scope of the Certificates' language. Specifically, Defendant argues that the Certificates only anticipate SRA reinsuring TIG, noting that each Certificate provides that the contracts are "an Agreement of Reinsurance under which the Reinsurer indemnifies the Company with respect to its insurance liability assumed under the policy." (AW Dec., Ex 45.) Defendant reasons that such language anticipated SRA reinsuring TIG, by way of succession to Ranger, not AEGIS, as "Company" was defined as Ranger. (Def.'s Mot. at 3.) Additionally, Defendant posits that the Certificates only anticipated covering claims settled by TIG, and that claims settled by AEGIS, where AEGIS was discharging liability and settling on its own accord, were plainly not within the scope of the SRA reinsurance agreements. (Def.'s Reply at 2.)

The disagreement between Plaintiffs and Defendant boils down to a question of contract interpretation. Contracts are to be interpreted and enforced according to their plain meaning and according to their clear and unambiguous terms. *In re Condado Plaza Acquisition LLC*, 620 B.R. 820, 831 (Bankr. S.D.N.Y. 2020). However, "[w]here the meaning of a word or phrase is

9

ambiguous, a court may look beyond the 'four corners' of the agreement and 'examine the record as a whole in an attempt to interpret the agreement so as to effectuate the intent of the parties.'" *Freedberg v. Landman*, 930 F. Supp. 851, 855 (E.D.N.Y. 1996) (quoting *Bank of New York v. Amoco Oil Co.*, 35 F.3d 643, 661 (2d Cir. 1994)). It is at that point that extrinsic evidence may be used as a guide to interpreting the agreement. *Marvel Ent., Inc. v. Kellytoy (USA), Inc.*, 769 F. Supp. 2d 520, 526 (S.D.N.Y. 2011). If a contract can be reasonably subject to two interpretations, then the interpretation of the contract is "a question of fact for the jury." *Bourne v. Walt Disney Co.*, 68 F.3d 621, 629 (2d Cir.1995) (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992)); *Cweklinsky v. Mobil Chem*. Co., 364 F.3d 68, 76 (2d Cir. 2004) (same).

The Court concludes that the Certificates can be reasonably subject to two interpretations, such that summary judgment is inappropriate as there exists a genuine dispute of material fact as to whether SRA breached the Certificates and, accordingly, whether damages were suffered as a result. Indeed, "[i]t is well-settled that whether a breach of contract has occurred is a question of fact that cannot properly be resolved in the context of a motion for summary judgment." *Daigle v. W.*, 225 F. Supp. 2d 236, 248 (N.D.N.Y. 2002).

Here, both Plaintiffs and Defendant's interpretations of the Certificates are reasonable. An interpretation of a contract is reasonable where it can be characterized as a view coming from "a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk–In Medical Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987).

Regarding the former, Plaintiffs' argument that the broadly encompassing language in the Certificates anticipates SRA covering all liability arising from the Ranger Policies is colorable;

10

after all, the Certificates contain language that is unqualified in establishing the parameters of the reinsurance coverage. *See* (Pltfs.' 56.1 ¶¶ 23-24.) Indeed, the Ranger Policies were "100% reinsured by SRA" and were at issue in the Duke settlement agreement. (*Id*. ¶ 89.) That TIG was listed as one of the settling insurers pursuant to the Duke coal ash litigation bolsters Plaintiffs' argument that AEGIS was settling on TIG's behalf, and, therefore, SRA was liable for the portion of the settlement payment assignable to TIG. (*Id*. ¶¶ 86, 91-92.) Therefore, "a reasonably intelligent person" could hold Plaintiffs' interpretation of the Certificates. *Breuer Capital Corp.,* 818 F.2d 260 at 263.

At the same time, "[p]laintiff[s'] construction may be correct . . . but [the Certificates are not with] sufficient clarity and precision to compel that interpretation as a matter of law." *Dayan Enterprises, Corp. v. Nautica Apparel, Inc*., No. 03 CIV.5706 LLS, 2003 WL 23021944, at *1 (S.D.N.Y. Dec. 23, 2003). The Certificates stipulate that SRA would indemnify TIG "with respect to its insurance liability assumed under the policy set forth on the face of this Certificate." (Pltfs.' 56.1 ¶ 23); *see also* (SLD Decl., Exs. 198, 200, 225, 229, 240, and 244.) The "policy" referenced, of course, being the listed Ranger Policy for each of the six Certificates. However, what exactly constitutes "liability assumed under the policy" by Ranger and, by way of succession, TIG is not immediately apparent and is not substantively defined by the Certificates' provisions. (*Id*.)

In light of such a lack of clarity, the Court may consider extrinsic evidence; "the parties' course of performance under the contract is considered to be the 'most persuasive evidence of the agreed intention of the parties.'" *Fed. Ins. Co. v. Americas Ins. Co.*, 258 A.D.2d 39 (1999). To restate the relevant facts, the Ranger Policies were issued pursuant to a fronting arrangement between Ranger and AEGIS. (Pltfs' 56.1 ¶ 108.) This fronting arrangement was necessary because AEGIS was not admitted in North Carolina and therefore could not issue insurance policies to

11

Duke for operations in North Carolina. (Pltfs.' ASF ¶ 8.)  Ranger was paid a fronting fee. (Def.'s 56.1 ¶ 19.) SRA then reinsured each of the six Ranger Policies issued to Duke. (*Id*. ¶ 9.) AEGIS handled and paid all claims regarding the Ranger Policies. (*Id*. ¶ 39.) Meanwhile, Ranger never paid a single claim under the Ranger Policies. (*Id*. ¶ 41.) Of note, TIG did not establish reserves for the Ranger Policies. (*Id*. ¶ 67.) Conversely, AEGIS posted reserves for the entire amount of the Duke settlement cost. (*Id*. ¶ 70.)

While the record consists of many more factual assertions than this brief recitation, the facts just stated are sufficient to render Defendant's interpretation of the Certificates reasonable. First, it is telling that over the course of over forty years, AEGIS was the primary party handling insurance policies for Duke and that neither Ranger nor its successor, TIG, paid a single cent towards any of the Ranger Policies. Such a dynamic betrays the possibility that it was AEGIS that was, in fact, liable for the Ranger Policies, and that Ranger and TIG were not liable for the Ranger Policies unless AEGIS became insolvent – the very essence of a fronting arrangement. Third, pursuant to its May 2017 Letter Agreement with TIG, AEGIS "acknowledge[d] that it [was] responsible for 100% of past and future loss . . . and defense costs payable under the Ranger Policies." (SLD Decl., Ex. 94 at ¶ 4.) This language functions as a clear recognition that AEGIS was primarily responsible for any liability arising in relation to the Ranger Policies.

Finally, that only AEGIS posted reserves for the Ranger Policies is especially revealing. As the Defendant correctly notes, "[u]nder New York law . . . an insurer 'shall maintain reserves in an amount estimated in the aggregate to provide for the payment of all losses or claims incurred on or prior to the date of statement . . . which are unpaid as of such and for which such insurer may be liable." (Def. Mot., at 23) (quoting N.Y. Ins. Law § 1303). Accordingly, if TIG were liable for the Duke claims as a result of the Ranger-fronting arrangement, then TIG was legally required to

post a reserve. TIG's decision not to – and AEGIS' decision *to* post a reserve – further indicates that only AEGIS was liable to Duke for the cost and claims associated with the Ranger Policies and that TIG was aware it was not liable for the Ranger Policies.

Therefore, the parties' course of performance would suggest that the liability assumed under the policy by TIG was limited to a credit risk that never materialized, rather than actual liability as Duke's proper insurer would have assumed. A reasonable party could thus interpret the Certificates consistent with the Defendant's interpretation. *Breuer Capital Corp.,* 818 F.2d 260 at 263. If one were to give credence to the Defendant's representation of the Certificate's provisions, SRA would have no amount to reinsure if TIG was not liable for any claims arising from the Ranger Policies. As a result, SRA would not be in breach of the Certificates for refusing to remit payment to AEGIS, and there would be no damages suffered.

At this point, Court finds both the Plaintiffs and Defendant's interpretations of the Certificates provisions plausible. Accordingly, there exists a genuine dispute of material fact as to whether SRA is in breach of the Certificates and as to the proper interpretation of the Certificate's scope of anticipated liability, which also raises a genuine dispute of material fact as to whether any damages were suffered. Correspondingly, the Court must deny both motions for summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiffs TIG Insurance Company and Associated Electric and Gas Insurance Services Limited's Motion for Summary Judgment is DENIED. Defendant Swiss Reinsurance America Corporation's Motion for Summary Judgment is also DENIED. The Clerk of Court is kindly directed to terminate the motions at ECF Nos. 83 and 87. A telephonic Pretrial Conference is scheduled for April 8, 2025 at 12:00 PM. To access the teleconference, please follow

these directions: (1) Dial the Meeting Number: 855-244-8681; (2) Enter the Meeting/Access Code: 2310 494 3855; (3) Press pound (#) to enter the teleconference as a guest.

Dated:   March 3, 2025                                            SO ORDERED:
         White Plains, New York

                                                                 _____
                                                                      NELSON S. ROMÁN
                                                                  United States District Judge